# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Maritza Nazario,<br><br>Plaintiff,<br><br>           v.<br><br>Hector Pesquera, et al.,<br><br>Defendants. | **Civil No. 13-1588 (SEC)** |

## OPINION & ORDER

Maritza Nazario (Plaintiff or Nazario) is a Puerto Rico police officer who worked in the Homicide Investigations unit in Mayagüez from April 2009 to September 2012. There, she was allegedly harassed by her female supervisor. Plaintiff was later transferred to a less prestigious unit in Cabo Rojo, where she allegedly had less opportunity of receiving a promotion. Believing that she had been subjected to gender-based discrimination, Plaintiff sued the Puerto Rico police department (PRPD) and various supervisors under Title VII of the Civil Rights Act.[1]

This case was initially assigned to Judge Gelpí, who denied Defendant's motion to dismiss via line order. This order is worth copying here, as it sets the stage and limits the scope of the analysis on the pending motion for summary judgment:

> The Court has reviewed the complaint and finds that plaintiff has well-pleaded her Title VII cause of action against the PRPD (i.e., the Commonwealth). The Superintendent of Police, who shall be substituted for the current official (Plaintiff to file such motion on or before 5/23/14) remains in the action only for the purpose of any prospective injunctive relief that plaintiff may possibly ultimately obtain. His spouse and

---

[1] The co-defendants are the PRPD, Jose Caldero in his official capacity, and Janice Rodríguez in her personal capacity.

> conjugal partnership are thus not parties to the action since no allegations are brought against him. Further, the causes of action against the PRPD are only those under Title VII as to which Congress abrogated Puerto Rico's sovereign immunity (as well as that of the States). There is no Art 1802 cause of action against the PRPD since it enjoys sovereign immunity. Lastly, codefendant Janice Rodríguez (and her conjugal partnership) remains as a defendant only as to Puerto Rico law tort claims. She may not be sued under Title VII as the statute does not provide for individual liability.

See Docket # 18. Judge Gelpí later recused himself from this case, as the parties' briefs on summary judgment raised matters pertaining to the PRPD Police Reform case, over which he currently presides. See Docket # 57. Thus, the same was transferred to this Court's docket. See Docket # 63.

Now before the Court is Defendant's motion for summary judgment on Plaintiff's Title VII claims. For the reasons that follow, Defendant's motion is **GRANTED**.

## I.  Factual Background

Nazario began working for the PRPD on March 1, 1996. She was transferred to the PRPD's Illegal Arms Division in 2007, and then to the Criminal Investigation Division (CIC, by its Spanish acronym) in 2009. Both units are located in Mayagüez. See Docket # 52 at ¶ 1-3. At the CIC, Plaintiff served as secretary for the General Director for Criminal Investigations, Colonel Jose Rodríguez Torres, until June or July 2011. Afterward, Colonel Rodríguez Torres was promoted, and Captain Janice Rodríguez replaced him as the General Director for Criminal Investigations. Plaintiff claims that Captain Rodríguez subjected to harassment on account of her gender.

Captain Rodríguez remained as Plaintiff's supervisor until October 3, 2011, when Rodríguez was reassigned to the Stolen Vehicles Division at Police Headquarters in Hato Rey. It is undisputed that, from then on, Plaintiff had no further interaction with Captain Rodríguez.

The facts now fast-forward to almost a year later. As is well known, the U.S. Department of Justice issued a report on numerous systemic deficiencies in the PRPD.

As part of the PRPD's effort to correct these deficiencies, the Mayagüez Regional Commander Agustín Marrero appointed a Committee to examine whether the CIC's members were qualified to work there. The members of this Committee were Inspector Ramón Irizarry Díaz, Captain Humberto Anglero Medina and Captain Jaime Rivera Rodríguez. According to the Committee's report, the CIC's Homicide Division – of which Plaintiff was a member – was composed of one second lieutenant, two sergeants, and ten officers. Plaintiff was the only female within that group.

As discussed in further detail below, the Committee found that Plaintiff was not qualified for her job. Following their recommendation, Commander Marrero signed Plaintiff's transfer order to an investigations unit in the Cabo Rojo district. One month after her transfer, Plaintiff filed a charge of discrimination with the EEOC. Once the EEOC proceedings concluded, Plaintiff filed suit in this Court.

## II.     Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v.

Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So, the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment.

### III. Analysis

The only causes of action that survived Judge Gelpí's order are Plaintiff's Title VII claim against the PRPD for gender-based discrimination and her tort claim against Captain Janice Rodríguez under Puerto Rico law. Plaintiff brings her gender-discrimination claim under two theories. The first is that she was subjected to a hostile work environment due to the comments and behavior of her supervisor, Captain Janice Rodríguez, back in 2011. The second is that her transfer to the Cabo Rojo district was discriminatory. The Court addresses each below, and finds that both fail as a matter of law. Because there is no other independent ground for the exercise of federal jurisdiction, and given that this decision is rendered before trial, the Court shall decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. See Gonzalez–De–Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit ... will trigger the dismissal without prejudice of any supplemental state-law claims." (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)).

a. Hostile Work Environment

Defendants posit that Plaintiff's hostile work environment fails because 1) it is time barred; 2) Plaintiff failed to exhaust her administrative remedies; and 3) the conduct that forms the basis of the claim is not sufficiently severe or pervasive so as to

configure a valid claim under Title VII. The Court agrees with Defendants on all fronts.

A Title VII plaintiff must file an administrative charge with the EEOC within either 180 or 300 days after the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). Puerto Rico is a deferral jurisdiction, and so an employee must file the administrative charge within 300 days of the alleged unlawful conduct if she first files a charge with the Commonwealth of Puerto Rico Department of Labor; otherwise, the charge must be filed within 180 days. Frederique–Alexandre v. Dep't of Nat. & Envtl. Res. P.R., 478 F.3d 433, 437 (1st Cir. 2007).

In this case, Plaintiff's hostile work environment theory is predicated on the allegedly discriminatory comments and treatment she received from her supervisor, Captain Rodríguez. The Supreme Court has held "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Accordingly, in order to sustain such a claim, a plaintiff must show that least one "anchoring act" occurred within the limitations period. Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005). Here, it is undisputed that all contact with Captain Rodríguez ceased on October 3, 2011. See Docket # 52, ¶ 14. At the very latest, then, Plaintiff must have filed an EEOC charge within 300 days of this date; that is, by July 30, 2012.[2] Yet, the record shows that Plaintiff filed her charge on October 22, 2012, various months after the deadline had elapsed. The claim is thus time-barred.

It is also evident that the EEOC charge did not preserve Plaintiff's hostile work environment claim for judicial review. As the First Circuit has stated on many occasions, a "Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge." Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir.

---

[2] July 29, 2012 was a Sunday.

2005). In other words, "[t]he scope of the civil complaint is accordingly limited to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990). In her EEOC charge, Plaintiff stated that she believed she was discriminated on the basis of her gender essentially because of her transfer to Cabo Rojo. She did not mention Captain Rodríguez at all, nor that she was the subject of any disparaging comments or harassment. See Docket # 48-1, p. 16. There is also no indication that the EEOC ever considered the facts or the theory underlying Plaintiff's hostile work environment claim. See Docket # 55-2. Plainly, Plaintiff failed to exhaust her administrative remedies on this claim prior to bringing suit.

Finally, even assuming that Plaintiff had complied with all procedural requirements, her claim would fail on the merits. Hostile work environment claims do not "turn on single acts but on an aggregation of hostile acts extending over a period of time." Havercombe v. Dep't of Educ., 250 F.3d 1, 6 (1st Cir. 2001). In order for such a claim to succeed, the plaintiff must show that the sum of the comments and conduct was severe or pervasive enough to alter the "conditions of the victim's employment and create an abusive working environment." Morgan, 536 U.S. at 116. This analysis includes subjective and objective components: "[t]he employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010). The objective portion of this test "should be judged from the perspective of a reasonable person in the plaintiff's position," and requires "careful consideration of the social context in which particular behavior occurs and is experienced by its target." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

At bottom, the Court must "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." Morgan, 536 U.S. at 116. Even though Plaintiff may have genuinely believed she was subject to severe and pervasive gender-based discrimination, the record reveals that Plaintiff's belief was not objectively reasonable.

Plaintiff asserts that during the few months she was supervised by Captain Rodríguez, she was criticized for the quality of her work. See Docket # 43, ¶¶ 17, 18.[3] For instance, Plaintiff claims that her supervisor told her that she was "good for nothing," and that occasionally Captain Rodríguez returned documents to Plaintiff, telling her that they were not "correctly done." Another time, Captain Rodríguez questioned whether Plaintiff had problems with her bladder because she went to the bathroom too often.[4] Finally, Plaintiff had to skip lunch in order to answer the phone.[5]

Even with all reasonable inferences granted in favor of Plaintiff, these facts simply show that Captain Rodríguez – for better or worse –was a harsh and demanding boss. But, as the First Circuit has repeatedly stated, "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000). Indeed, Title VII is not a "general civility code," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), and it does not proscribe conduct such as the one present in this case.

Other factors cement the conclusion that there is no objectively hostile work environment here. Plaintiff does not allege, for instance, that the atmosphere at work was permeated with hostility on a daily basis. See, e.g., Kosereis v. Rhode Island, 331 F.3d 207, 217 (1st Cir. 2003) (repeated reprimands from supervisor concerning fact that plaintiff was late for work not deemed sufficiently severe or pervasive so as to create hostile work environment); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783

---

[3] Although it is not the Court's obligation to do so, the Court has carefully parsed the totality of Plaintiff's deposition. See Docket 43-1.

[4] Plaintiff also sprinkles in a bit of hearsay, claiming that her immediate supervisor told her that "Captain Rodríguez told him that [Plaintiff] was a woman that runs around with a lot of men." Yet hearsay evidence, "inadmissible at trial, cannot be considered on a motion for summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). So, the Court must disregard this statement here.

[5] It is not clear whether it was Captain Rodríguez who ordered Plaintiff to skip lunch.

(1st Cir. 1990) (expressing doubt as to whether five sexual comments made over the course of a four to five week period constituted harassment severe and pervasive enough to create a hostile work environment), abrogation on other grounds recognized by Smith v. F.W. Morse & Co., 76 F.3d 413, 430 (1st Cir. 1996). The record is also barren of any evidence showing that Plaintiff's performance at work was affected due to Captain Rivera's comments.

There is one piece of evidence that, at first blush, does not seem to fit this mold, which is that Plaintiff was ordered to skip lunch to answer the phone. There is caselaw supporting the common-sense notion that being forced to work additional hours without compensation, as Plaintiff seems to argue here, is something that affects the "terms, conditions, or privileges" of employment, and is thus actionable under Title VII. See e.g. Wittenberg v. Wheels, Inc., 963 F. Supp. 654, 663 (N.D. Ill. 1997). Given closer scrutiny, however, the Court finds that Plaintiff's evidentiary proffer is woefully inadequate to sustain such a claim here. For instance, there is no information from which the Court can discern just how many times Plaintiff was required to skip lunch. See Docket # 52-2. As such, there is no basis upon which the Court could conclude that this particular conduct was so severe or pervasive so as to constitute a material change in Plaintiff's compensation.

It is also clear that the referenced comments and conduct of Captain Rivera are gender-neutral, as she could have plausibly done the same to a male subordinate without altering the phrases she used, or the conduct that she exhibited. This provides yet another basis to dismiss this claim. See e.g. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 225 (1st Cir. 2012) (affirming dismissal of gender-stereotyping claim where the plaintiff was described by her superiors as "fragile," "immature," "unable to handle complex and sensitive issues," engaged in "twisting the truth," and exhibiting "lack of judgment."). For all these reasons, Defendant's motion for summary judgment is granted on this point.

  b. Discriminatory Transfer

Plaintiff next complains that the Defendants' decision to transfer her to a less prestigious division in Cabo Rojo was due to unlawful discrimination on account of her gender. But there is no direct evidence of gender discrimination in this case. So, the Court "must apply the burden-shifting analysis of [McDonnell Douglas], to help 'sharpen the inquiry into the elusive factual question' of the employer's motivation." Hicks v. Johnson, 755 F.3d 738, 744 (1st Cir. 2014) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 n. 8 (1981)) (internal citation omitted). This three-step analysis entails the following: "First, the plaintiff must make out a prima facie case of discrimination." Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006). "The burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision." Id. "Finally, the burden is placed on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext and that the real reason was discrimination." Id. Even assuming *arguendo* that Plaintiff had made out a prima facie case, her claim crumbles shortly afterward. Plaintiff simply fails to show that Defendants' legitimate reason for the transfer is mere pretext for gender-based discrimination. In order to provide context for this analysis, the Court shall provide a short synopsis of the relevant facts.

Prompted by the U.S. Department of Justice's Report (hereinafter referred to as the DOJ Report), Commander Marrero established a Committee to assess whether the Homicide Division's members were qualified for the job. The Committee's Report specifically mentions that the CIC's Homicide Division is "elite within the Investigation Branch," and thus that the "personnel assigned to it must be qualified, have investigation experience, and have received training in investigation courses, even though [the Committee understood] that the training is offered exclusively" to Homicide Division personnel. See Docket # 48-1. According to the Committee, the Homicide Division's members must be credible and provide adequate testimony in court, have a favorable relationship with the DA's office and also with their

supervisors, demonstrate satisfactory skill in writing reports, and have good work commitment and availability. Id.

The Committee concluded "that previous administrations, trying to reinforce and meet the requirements and demand to increase the number of personnel to comply with the duties and obligations to solve [cases], were not diligent when they selected three (3) officers who did not go through the process of being investigated and recommended after an interview with the Criminal Investigation Corps Director." Id., p. 12. This finding specifically refers to Plaintiff and two other male officers in her group, Jorge Vélez Rodríguez and Robert Martínez Medina. Id. The Committee considered that this fault undermined any trust in these officers' "credibility in court" and before the "DA's office." Id. Aside from this, the Committee noted that according to the DOJ Report, Plaintiff and other officers had participated in the unlawful search of several houses. See Docket # 43, ¶ 32. [6] As a result, a federal trial ensued, ending with a $6.7 million dollar jury award in favor of the plaintiffs. See Carlos Vargas Torres et al. v. Pedro Toledo, et al., Civil No. 07-2002 (FAB), Docket # 328.

On this basis, the Committee recommended the removal of six persons from the CIC's Homicide Division. Two of these were supervisory personnel, Lieutenant José Figueroa Andújar and Sergeant Irving Correa Nazario. The remaining four included Plaintiff and three other male officers. On September 10, 2012, Commander Agustín Marrero – "the one with the authority to make [such] transfers" – ordered Plaintiff's immediate transfer to the Cabo Rojo district. See Docket # 43, ¶ 22. At the same time, agents Robert Martinez and Lieutenant Jose Figueroa Andujar were also transferred from the Homicide Division by the Commander's order. Based on these facts, the

---

[6] Plaintiff qualifies this statement, stating that the Federal report erroneously concluded that Plaintiff had actually planted evidence. All the same, Plaintiff's participation in that case is not in question. More importantly, the report contains other – more direct – findings concerning Plaintiff's lack of qualifications for the job, which Plaintiff does not challenge.

Court finds that Defendants had a legitimate and non-discriminatory reason to remove Plaintiff from the Homicide Division.[7]

Plaintiff counters that all of this was smoke and mirrors to hide the fact that her transfer was motivated by gender-based discrimination. In support of her contention, Plaintiff constructs a straw man argument. She first erroneously asserts that the Defendants relied on the DOJ Report in order to justify her transfer. Next, she says that reliance on that report was flawed given that Police Superintendent Hector Pesquera stated, "in response to a request for an opinion from one of the other officers transferred at the same time as [Plainitff], that [this report] should not be used as the rationale for transferring any officer." See Docket # 51, p. 2 (emphasis added). This argument requires some factual untangling.

First, it is evident from the discussion above that Plaintiff's transfer was justified using the findings issued by the PRPD's commission, not the DOJ Report. So, Plaintiff's argument fails from the outset.

But even if the DOJ Report was material to the transfer decision, Plaintiff's argument would still fail, since it relies on a skewed and erroneous reading of the Police Superintendent's letter. Lieutenant Figueroa Andujar's attorney asked the Police Superintendent to clarify whether his client would be barred from receiving a promotion due to the DOJ Report. Pesquera responded as follows: "There is no statement in the federal report that members of the Police force that are mentioned as part of the incidents that are covered in the report may not be promoted." See Docket # 55-1. Plaintiff misreads this statement and claims that Pesquera asserted that report could not be used as the rationale for "transferring any officer." Far from establishing a conflicting party admission, the Court finds that Pesquera's response is simply immaterial to this controversy. At issue here was whether Plaintiff's transfer was

---

[7] The core of Plaintiff's complaint is not that she was transferred to Cabo Rojo *vis a vis* any other place, but rather that she was removed from the highly prestigious Homicide Division.

justified, not whether she would be barred from receiving promotions in the future due to the DOJ Report.

In the end, the PRPD commission found that Plaintiff was not qualified for the job, which provides a reasonable and non-discriminatory justification for her removal from the Homicide Division. To reiterate, the Commission found that she had not been properly vetted, calling into question her ability to be credible in court and also before the DA's office. The Committee found both of these factors to be essential qualities of anyone employed at the CIC's Homicide Division. The Court further notes that Plaintiff provided no evidence that her purported nemesis, Captain Rodríguez, had anything to do with the findings issued by the Commission, or even with Captain Marrero's decision to transfer her to Cabo Rojo.

To seal the deal, there is also zero evidence showing that the decision to transfer Plaintiff was tainted with gender-based discrimination. In fact, two other male officers were transferred out from the Homicide Division for the same reason as Plaintiff. While Plaintiff claims she was better qualified than these officers, and so that those officers were not "similarly situated" to her, the record does not support this statement. Plaintiff provided an affidavit stating that she had a "100%" case resolution rate. See Docket # 52-1, ¶ 5. But besides her brief, nowhere does she indicate that the rest of the officers transferred out had worse qualifications. Moreover, even if that were true, Plaintiff does not explain how this can override the fact that the Commission found, using an entirely independent basis, that she was not qualified for the job. For all of these reasons, the Court finds that Plaintiff has not refuted Defendants' legitimate and non-discriminatory reason for her transfer out of the Homicide Division.

**IV.    Conclusion**

As far as the Court has been able to discern, gender did not play any role in Defendants' actions toward Plaintiff. The fact that the PRPD has historically been a male-dominated agency does not automatically turn any administrative action against a

female employee into a federal discrimination case. Accordingly, Defendants' motion for summary judgment is **GRANTED**. Judgment shall follow dismissing Plaintiff's Title VII claims with prejudice, and her state law claim without prejudice.

Given that Plaintiff's state law claim is based on facts that happened in 2011, Plaintiff should carefully assess whether this claim is time barred before reinitiating this suit in state court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2016.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge